IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Case No. 07-cv-01483-WDM-MJW

DRY CLEANING TO-YOUR-DOOR, INC.,
d/b/a DRY CLEANING TO-YOUR-DOOR,

    Plaintiff,

v.

WALTHAM LIMITED LIABILITY COMPANY,
JEFFREY A. LATHAM,
and JULIE W. LATHAM,

    Defendants.

---

## ORDER FOR PRELIMINARY INJUNCTION

---

This matter is before me on the Plaintiff's Motion for Preliminary Injunction. Following evidentiary hearings, consideration of the parties' arguments and pleadings and in accordance with oral ruling on November 29, 2007, which is incorporated by reference, I make the following findings and conclusions pursuant to Fed. R. Civ. P. 52(a) and 65(d):

### FINDINGS OF FACT

A. Plaintiff is a franchisor of residential dry cleaning pick-up and delivery businesses, with franchisees located through the United States.

B. Defendants were franchisees of Plaintiff for a ten-year term, as embodied in the Franchise License Agreement ("Franchise" or "Agreement"), dated December 31,

1996. Exhibit 1.

C. The Agreement contains a non-competition covenant which prohibits Defendants from owning, maintaining, engaging in, being employed by or having an interest in any business that operates, directly or indirectly, a residential dry-cleaning pick-up and delivery business which competes with Plaintiff or any of its franchisees for a two-year period after the expiration of the Franchise Agreement (December 31, 1996) within Defendants' franchise territory or the territory of another of Plaintiff's franchisees, together with a 25-mile radius around such territories. Exhibit 1, Sections I.B., VIII.A.3.

D. The agreement provides that it is to be construed and interpreted under Florida law.

E. Although initially indicating they would renew the Franchise, Defendants declined to do so but have continued to operate their residential dry-cleaning pick-up and delivery business at the same location and within their former territory.

F. Defendants' conduct of their business is under a new trade name, To Your Door Dry-Cleaning, and some of the trade dress and colors and otherwise have been modified from the Plaintiff's trade dress.

G. Defendants have been successful in operating the business. The recent joint tax returns of the individual defendants indicate that their adjusted gross income from the entity profits and salary paid by the entity was $107,655 for 2006 and $118,901 for 2005. Exhibit 54. Taking into account the economic benefit of operating a small business such as depreciation, a reasonable approximation of Defendants' monthly economic benefit is at least $10,000.

H. In the franchising industry, non-competition provisions and territorial integrity are critical contractual factors to protect the value of franchise systems, particularly for a franchise more dependent on service such as Plaintiff's organization as opposed to a franchise which includes a product such as McDonald's or other fast-food franchise enterprises.

I. Plaintiff has sought to protect the territorial integrity of its franchisees with mixed success.

J. Defendants' territory was invaded by a prior employee of Plaintiff and Plaintiff's efforts to protect Defendants' territory was not that successful. Partially as a consequence of that circumstance but also because of the Defendants' success, Defendants were granted expansions to their territory. See Exhibit 3.

K. There are other competing residential pick-up systems in or near Defendants' territory.

L. Findings of fact inherent in the following conclusions of law are incorporated herein by reference.

## CONCLUSIONS OF LAW

1. The Agreement provides that Florida law shall be applicable. That is consistent with the parties negotiations at the time of the agreement. Florida was the place of Plaintiff's business and Defendants traveled to Florida to investigate whether to invest as a franchisee. Further, enforcing the parties' agreement and applying Florida law is not contrary to the public policy of Colorado. Although Colorado law renders some covenants not to compete void, it excepts from such prohibition contracts

3

for the purchase and sale of business and protection of trade secrets. See Colo. Rev. Stat. § 8-2-113(2)(a)(b). A purchase and sale of a franchise has been recognized as covered by such exemption. See I Can't Believe It's Yogurt v. Gunn, 1997 W.L. 599391 (D. Colo. 1997).

2. However, the standards for determining whether the requested injunctive relief should be granted are established by the law of the federal forum, i.e. the Tenth Circuit. Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1361 (10th Cir. 1990).

3. To establish the right to a preliminary injunction under the law of the Tenth Circuit the moving party must show by clear and unequivocal evidence the following so-called Lundgrin factors: (a) substantial likelihood that movant will prevail on the merits; (b) irreparable injury unless the injunction issues; (c) threatened injury to the movant outweighs potential damage the injunction may cause the opposing party; and (d) the injunction, if issued, would not be adverse to the public interests. Lundgrin v. Claytor, 619 F.2d 61, 63 (Tenth Cir. 1980); SCFC ILC, Inc. v. Visa, USA, Inc., 936 F.2d 1096, 1098 (Tenth Cir. 1991).

3. However, there are certain types of injunctions which are disfavored and require the movant to satisfy a heavier burden: (a) preliminary injunction that disturbs the status quo; (b) a preliminary injunction that is mandatory as opposed to prohibitory; and (c) an injunction that affords the movant substantially all the relief sought at the conclusion of the full trial. O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F. 3d 973, 975 (10th Cir. 2004).

4. I conclude that the last peaceable position of the parties was immediately

4

prior to the expiration of the franchise term. The status quo was therefore that Defendants were bound by the non-compete provision meaning that an injunction prohibiting competition would be maintaining the status quo and not mandatory. Further, a preliminary injunction during the pendency of these proceedings will not provide substantially all the relief to which the Plaintiff may be entitled. Accordingly I conclude that the requested injunction does not require the Plaintiff to meet the higher standards. See Double Quick, Inc. v. Taikin, 402 F. Supp. 2d, 1251, 1255 (D. Colo. 2005).

5. Turning to the application of the Lundgrin standards, I apply the more liberal definition of "probability of success" because, as noted below, Plaintiff prevails on the other three factors. Accordingly, Plaintiff need only show that there are serious issues to be decided which require more deliberate and full hearing. Lundgrin, 619 F.2d at 63. I conclude that that is the case here.

6. Given the testimony that territorial integrity and covenants not to compete are essential to maintaining Plaintiff's established franchise network the failure to grant injunctive relief may well result in irreparable harm which is not readily remedied by damages. I also observe that injunctive relief is considered a preferred remedy in non-competition cases. See, e.g., Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1265 n. 7 (10th Cir. 2004) (citing Colorado law);

7. Given the threat to Plaintiff's entire franchise system, I conclude that the balance of threat and harm weighs in favor of the Plaintiff because the Defendants' damage may be more readily measured and would be of a much lesser extent in the

event that the failure to enforce the covenant resulted in copycat litigation with other franchisees.

8. The public interest is served by enforcing the parties' contract and by using preferred injunctive relief to enforce the parties' non-competition agreement.

9. Accordingly I conclude that a preliminary injunction should issue pending full trial on the merits and resulting judgment.

10. Under Florida law non-compete provisions of one year or less are deemed reasonable while those of more than three years are deemed unreasonable. Florida Stat. § 542.335(1)(d)(2). The two-year term here therefore appears reasonable.

11. Addressing the geographic extent of the covenant, Florida and other authorities have enforced non-compete provisions with 5, 10 or even 75 miles radii. See Southernmost Foot and Ankle Specialists, P.A. v. Torregrosa, 891 So.2d 591 (Fla. App. 2004); Gold v. Holiday Rent-A-Car Int.'l, Inc., 627 F. Supp 280 (W. D. Mo 1985). Applying a 25-mile radius in this case would be an extensive restriction. The evidence was that franchise territories were located in Parker, North Denver or Northglenn, and Windsor. Applying a 25-mile radius to those locations would effectively preclude Defendants from competing on the front range from Colorado Springs to North of Ft. Collins. Such a constraint is overly broad and unreasonable, inconsistent with the standards of Florida law. See Fla. Stat. Ann. § 542.335(1)(c). Florida law gives me the authority to modify a non-compete and limit the relief granted to that which is reasonably necessary to protect the legitimate business interests of the franchisor. Id. Given the nature of this business which appears to be highly territorial and the history

of the Defendants' operation which appeared to be limited entirely to within its franchise territory, limiting the application of the non-compete provision to the territory and that area which would be immediately adjacent to it would be more reasonable. I conclude that the radius should be reduced from 25 miles to 5 miles around the Defendants' territory only.

12. Bond is required to provide security for the Defendants against costs and damages that may be incurred or suffered should it be determined the Defendants were wrongfully enjoined. Fed. R. Civ. P. 65(c). Potential damages include the loss of profit or income from operating Defendants' business. The evidence suggests that Defendants will be deprived of almost $10,000 a month by reason of the injunction. It is a reasonable anticipation that the parties should be able to try this matter within a year's time. I also observe that only slightly more than one year of the original two-year period of the covenant remains. Accordingly, a bond of $150,000 should be reasonable security to cover the potential loss of income and normal litigation costs. It is part of my inherent authority to determine the equitable reasonableness of the restrictive covenant.

Accordingly, it is ordered:

1. Plaintiff's Motion for Preliminary Injunction (doc. no. 3) is granted;

2. Upon the condition of Plaintiff posting a bond In the amount of $150,000, Defendants and all of their officers, agents, servants, employees and attorneys, and those persons in active concert with them who receive actual notice of this order by personal service or otherwise, are hereby preliminarily enjoined, pending the outcome

of these proceedings or further order of the court, from owning, maintaining, engaging in, being employed by or having any interest in any business that directly or indirectly operates a residential dry-cleaning pick-up and delivery business within the franchise territories, of all of Plaintiff's franchisees in Colorado, including the Defendants' franchise territory under the Agreement, more particularly described as follows:

    a. The area encompassed by zip code 80125 and the area bounded to the North by U.S. Route 285, to the West by Highway C470 to include Ken Caryl Valley and Willow Springs, to the South by Highway C470, and to the East by Broadway to the intersection of U.S. Route 285; and

    b. The area bounded to the East by Sheridan Boulevard, to the North by Jewell Avenue, to the West by Highway 470, and to the South by Hampden Avenue;

    c. The area encompassed by zip code 80401; and

Together with all of the area within five miles of the Defendants' described territory.

3. This injunction includes the prohibition of Defendants and those described above from using, by advertising or any other manner, the name of Dry Cleaning To-Your-Door ®, and any and all marks and other trade secrets, confidential information,

slogans, telephone numbers, signs, symbols or devices forming part of the Plaintiff's system or otherwise used in connection with the operation of the Franchise.

DATED at Denver, Colorado, on December 20, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge